### UNITED STATES of America

### v.

### Lafayette "Fate" THOMAS, et al.

### No. 3–90–00020.

United States District Court,
M.D. Tennessee,
Nashville Division.

Aug. 29, 1990.

tation for people and things.

William M. Cohen, Wendy Hildreth Goggin, Melissa Harrison, Office of the U.S. Atty., Nashville, Tenn., for plaintiff.

Ross E. Alderman, Nashville, Tenn., for Thomas.

**MEMORANDUM**

HIGGINS, District Judge.

Now before the Court are identical motions by three television stations in Nashville, Channels Two, Four and Five, as well as Don Aaron of Channel Four, to copy a videotape made by the United States, pursuant to a search warrant, of the defendant LaFayette "Fate" Thomas' residence (filed July 19, 24 and 25, 1990; Docket Entry Nos. 599, 609 and 612). Defendant Thomas filed responses on July 27 and August 7, 1990 (Docket Entry Nos. 614 and 619). Defendant Thomas' wife, Marlies, requested to intervene in opposition to the motions on August 1, 1990 (Docket Entry No. 617), and Channel Four responded to Mr. and Mrs. Thomas' opposition to its motion on August 14, 1990 (Docket Entry No. 624). The government has not filed a response and therefore, apparently takes no position on the motions.

The videotape in question was shown in the courtroom during a June 6, 1990, hearing on the defendant's motion to suppress. At least one news reporter was present in the courtroom, but the television monitor was turned toward the bench, obstructing the audience's view of the videotape. The Court denied the motion to suppress the videotape, which was made during a valid search of defendant Thomas' residence. The Court found, *inter alia,* that the videotape was a form of taking notes and recording mental images through photography. The Court further found that the items in the videotape were in plain view of the executing agents and, therefore, concluded that the videotape was a lawful seizure of the agents' mental images (memorandum and order entered June 18, 1990; Docket Entry Nos. 523 and 524).

For the reasons stated below, the Court denies the motions to copy the videotape.

The television stations assert that the qualified right of access is derived from both the First Amendment and common law. Further, they assert that this common-law right to inspect and copy judicial records unquestionably applies to tape recordings. *United States v. Beckham,* 789 F.2d 401, 414 (6th Cir.1086). They argue

that the interests articulated by Mr. and Mrs. Thomas against copying the videotape do not overcome the strong common-law presumption of access. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Therefore, they insist that the balance weighs heavily in favor of the right to inspect and copy.

Defendant Thomas maintains that the stations' request exceeds the constitutional requirements of public access to the courts and would violate the defendant's constitutional rights to a fair trial and to privacy by the appropriation and exploitation of the private images of his home. He argues that the public's right of access to the hearing and to the relevant subjects of the videotape has not been limited in any way and that the First Amendment does not require granting this request. He bases this statement on the fact that the search warrant and its related documents were unsealed and available to the public and the press since February and that the search itself was reported by the press when it occurred in 1989. Further, the common-law right to inspect judicial records is within the sound discretion of the trial court, and the defendant contends that the interests of Mr. and Mrs. Thomas outweigh the interests of the media to copy the videotape.

Mrs. Thomas states that copying the videotape would be an intrusion upon her right of privacy since the most intimate and personal details of her home are shown in the videotape. She argues that the media has no right to information superior to that of the general public and her home is not open to the general public. Thus, the media has no right to broadcast the interior of her home. Further, Mrs. Thomas is not a party to this action and, hence, her privacy rights are not limited by any other interests.

In *United States v. Beckham*, cited *supra*, the Sixth Circuit affirmed the district court's denial of a request by the news media for copies of video and audio tapes submitted as evidence in that action. However, it did grant permission to copy the documentary exhibits. As in *Nixon*, cited *supra*, the court found no constitutional right to copy the tapes. The court stated that the common-law right to inspect and copy judicial records and documents is not absolute and "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 409 (quoting *Nixon*, 435 U.S. at 599, 98 S.Ct. at 1312, 55 L.Ed.2d at 580). The Court must weigh the interests of the parties against the public interest and the duty of the Court. The *Beckham* court stated several other factors to be weighed: (1) the court's supervisory powers, (2) the benefit to the public from the incremental gain in knowledge that would result from seeing the tape, (3) the degree of danger to the defendants or persons on the tapes, (4) the possibility of improper motives on the part of the media, such as promoting public scandal or gratifying private spite, and (5) any special circumstances in the particular case. *Id.* (citation omitted).

The *Beckham* court noted that the public and the media have a constitutional right to attend criminal trials and to report what they have observed. *Id.* (citation omitted). The court held that "[t]here were no restrictions on media access to the trial or on the publication of information in the public domain." *Id.*

In *Nixon v. Warner Communications, Inc.*, cited *supra*, the Supreme Court upheld the district court's denial of the media's request to obtain copies of tape recordings of oval office conversations submitted in evidence at the criminal trial of President Richard Nixon's former advisers. The Court held that the First Amendment did not require the media to be given greater access to information about a trial than that available to the public generally and that the Sixth Amendment right to a public trial did not require a trial to be broadcast or taped for the public. 435 U.S. at 609, 98 S.Ct. at 1318, 55 L.Ed.2d at 587. Further, the Court held that the First and Sixth Amendments do not require copying videotaped evidence, and that the common-law

right of access to judicial records does not require "copying on demand." 435 U.S. at 603, 609, 98 S.Ct. at 1315, 55 L.Ed.2d at 583.

■ In the present action, there was no deprivation of access to the suppression hearing or any of the documents filed relating to the case as a whole or to the suppression hearing specifically. Given the full access to information and the full freedom to publish, there was no fundamental right implicated and the First Amendment argument fails.

In determining whether the common-law right applies in this particular case, the Court begins with a presumption of access and then weighs the factors set out in *Beckham.*

■ First, the Court's supervisory powers include controlling the threat of publicity that may result from the dissemination of the videotape which could possibly deprive the remaining defendant, Jerry Williams, his right to a fair trial. The subject of the videotape is the interior of defendant Thomas' condominium, which is also related to the extortion charge against defendant Williams. The government is not scheduled to try defendant Williams until September. This concern about increased publicity and its effect on further proceedings is an appropriate factor for the Court's determination.

Second, the knowledge the public could gain from seeing the videotape is so small as to be inconsequential. The information regarding this case and the videotape already disseminated to the public has been substantial. The media had full access to and was present at the June suppression hearing. It also had full access to the pleadings filed concerning the search and to the original April 1989 search warrant, affidavit and the warrant's return/seizure list. The video is of poor quality and photographs, in a very crude fashion, the items listed in the search warrant. The fact that the video photographs items not listed in the search warrant will be discussed next. It is the Court's belief that the benefit to the public from viewing the videotape would be *de minimis.*

Third, the degree of danger to the defendants or persons on the tapes is worth consideration. Mrs. Thomas is shown briefly on the tape sitting on the stairway leading to the second story of the condominium. Further, the videotape captures many things in the residence which are not relevant to these proceedings and, in fact, were not the subject of the search warrant. Thus, the full scope of the videotape is not relevant. Even though defendant Thomas is a public figure, he does not surrender all his rights to privacy, and the public has no automatic right of access to the interior of his home and his personal belongings which were not made the subject of the search warrant. Given the fact that the videotape includes substantial footage of irrelevant items, as well as the appearance of Mrs. Thomas, the Court finds the danger here is considerable. The videotape cannot be edited to a point where the incriminating footage is successfully removed.

Fourth, the possibility of improper motives on the part of the media is merely speculative. The Court has been given no indication as to how the media may use the videotape, since the Sheriff's case is nearing an end with only his sentence to be determined.

The fifth, and final factor, is any special circumstances. The Court will note that the videotape in question was shown at a pretrial hearing, not at the trial itself. While the Court recognizes the right of access does apply to certain pretrial matters, the interests implicated by pretrial matters are, in some instances, not as compelling as those at trial. Also, the trial of the remaining defendant, Jerry Williams, may raise special circumstances if the videotape is broadcast.

Weighing the relevant facts and circumstances of this particular case, as well as the interest of the parties against the interest of the public and the duty of the Court, the Court finds that, in its discretion, there are enough factors weighing against the copying of the videotape to deny the motions of the media. The Court recognizes that greater scrutiny of public officials is

clearly appropriate since, by their office, they carry greater responsibilities and expectations than those demanded of ordinary citizens. However, the Court finds that there was no deprivation of access to information about this particular matter and the public will not be denied its right to know the facts by the denial of the motions.

Accordingly, the motions of Don Aaron, Channels Two, Four and Five to copy the videotape in question are denied.

An appropriate order will be entered.

## ORDER

The motion of Marlies Thomas (filed August 1, 1990; Docket Entry No. 617) to intervene in opposition to motion to copy videotape is granted.

The motions of Don Aaron, Channel Two, Four and Five (filed July 19, 24 and 25, 1990; Docket Entry Nos. 599, 609 and 612) to copy a videotape made by the United States, pursuant to a search warrant, of the defendant LaFayette "Fate" Thomas' residence are denied. Insofar as the motions seek to view the videotape, the same are granted. The videotape may be viewed on a monitor in the Clerk's Office.

It is so ORDERED.